**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Maureen Henson, | No. CV-06-526-TUC-FRZ (JCG) |
| Plaintiff, | |
| vs. | **REPORT AND**<br>**RECOMMENDATION** |
| Air National Guard Air Force Reserve<br>Command Test Center, et al., | |
| Defendants. | |

Pending before the Court is a Motion to Dismiss filed on December 21, 2006 by Defendants Trinity Technology Group and Douglas D. Bullock ("Trinity Motion"). (Doc. No. 13.) Plaintiff filed a response on January 26, 2007 (Doc. No. 15) and Defendants timely replied. (Doc. No. 16.)

Also pending before the Court is a Motion to Dismiss filed on January 12, 2007 by Defendants Air National Guard Air Force Reserve Command Test Center (AATC) and the Secretary of the Air Force, Michael Wynne, in his official capacity ("AATC Motion"). (Doc. No. 14.)  Plaintiff filed a response on February 12, 2007 (Doc. No. 17) and Defendants timely replied. (Doc. No. 20.)  Pursuant to the Rules of Practice in this Court, the matter was assigned

1
2
3
4
5

to Magistrate Judge Guerin for a report and recommendation. On April 19, 2007, a hearing on the Motions was held before Judge Guerin.[1]   After review, the Magistrate recommends the District Court, after its independent review of the record, enter an order granting Defendants' Motions.

6

**Factual and Procedural Background**

7
8
9
10
11
12

According to the Complaint, Plaintiff was employed as a Senior System Analyst in May 20, 2004 by Trinity Technology Group, Inc. ("Trinity").  (Complaint at ¶¶ 6, 15.)  Trinity is a federal contractor that contracts with AATC.  (Complaint at ¶ 14.)  Defendant Douglas D. Bullock ("Bullock") is the President and CEO of Trinity Group.  (Complaint at ¶ 7.)  Defendant Michael Wynne is the Secretary of the Department of the Air Force.  (Complaint at ¶ 5.)

13
14
15
16
17
18
19
20
21

Plaintiff is disabled and suffers from fibromyalgia and disorders related to fibromyalgia, Reflex Sympathetic Disorder, Sjogrens Syndrome and Raynaud's Phenomenon.  (Complaint at ¶¶ 18-19.)  In April, 2005, Plaintiff requested accommodation of her disability by Defendants.  (Complaint at ¶ 30.)   In response to her request, Plaintiff was subjected to a hostile work environment  (Complaint at ¶¶ 31-33), and eventually terminated on June 3, 2005.  (Complaint at ¶ 35.)

Plaintiff filed a Charge of Discrimination alleging disability discrimination and retaliation

22
23
24
25

[1]After oral argument on Defendants' Motions to Dismiss, Plaintiff filed two separate documents containing supplemental authority.  (Doc. Nos. 27 and 28.)  Defendants moved to strike the filings (Doc. Nos. 29 and 32).  By Orders filed simultaneously with this Report and Recommendation, the Court granted the Defendants' Motions to Strike.  The Court notes that, even if the Court did not grant the Motions to Strike, the additional authority cited in the Supplements would not change the conclusions set forth in this Report and Recommendation.

against Trinity with the United States Equal Opportunity Commission ("EEOC") on or about August 4, 2005.  (Complaint at ¶ 36.)  Plaintiff received her Notice of Right to File a Discrimination Complaint on July 17, 2006.    (Complaint at ¶ 37.)  Plaintiff filed an administrative complaint alleging discrimination and retaliation against the AATC with the EEOC Officer of AATC on August 31, 2005.  (Complaint at ¶ 38.)  The EEO Officer acknowledged receipt on September 1, 2005.  (Complaint at ¶ 38.)  On November 16, 2005, Plaintiff filed a timely appeal of the decision of the EEOC.  (Complaint at ¶ 39.)  The EEOC took no action within the 180-day time period set forth in CFR 1614.407.  (Complaint at ¶ 40.)

On October 13, 2006, Plaintiff filed a Complaint in the United States District Court, District of Arizona, against Defendants AATC, Wynne, Trinity and Bullock.  Plaintiff's Complaint alleges four counts against Defendants: (1) Count 1, violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*., alleged against Defendant Trinity,[2] (2) Count 2, violation of the Rehabilitation Act, 29 U.S.C. § 701 *et seq*., alleged against Defendant AATC,[3] (3) Count 3, violation of the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq*., alleged against

---

[2] Defendants Trinity and Bullock moved to dismiss Count 1 as against Defendant Bullock because the ADA does not impose liability on individuals.  Defendants AATC and Wynne also moved to dismiss Count 1 as against them because the Count appeared to be limited to Trinity.  In her opposition to Trinity's motion to dismiss, Plaintiff clarified that Count 1 of the complaint is alleged solely against Defendant Trinity. (Opposition to Trinity Motion, pg. 5.) Accordingly, there is no need for the Court to order that Count 1 be dismissed as against AATC, Wynne or Bullock.

[3] Defendants Trinity and Bullock moved to dismiss Count 2 as against Trinity and Bullock because only Defendant AATC is named in Count 2.  In her opposition and at oral argument, Plaintiff stated that Count 2 of the complaint is alleged solely against Defendant AATC. (Opposition to Trinity Motion, pg. 6; Tr. 4/19/07 at pg. 7.)  Accordingly, there is no need for the Court to order that Count 2 be dismissed as to Defendants Trinity and Bullock.

Defendants AATC, Trinity and Wynne, and (4) Count 4, intentional infliction of emotional distress, alleged against Defendants Trinity and Bullock.[4]

**Standard of Review**

Defendants Trinity and Bullock argue that they are entitled to dismissal of Plaintiff's complaint pursuant to Rules 12(b)(1), 12(b)(6) and 12(b)(7), Fed. R. Civ. P. Defendants AATC and Wynne argue that they are entitled to dismissal of Counts 2 and 3 of Plaintiff's complaint pursuant to Rule 12(b)(1) and 12(b)(6).

**A.      Rule 12(b)(1) standard of review**

Federal Rule of Civil Procedure Rule 12(b)(1) provides for motions to dismiss for lack of subject matter jurisdiction. The burden of proof on a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the court is not "restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir.1988).

**B.      Rule 12(b)(6) standard of review**

The dispositive issue raised by a Rule 12(b)(6) motion is whether the facts as pleaded, if established, support a valid claim for relief. *See Neitzke v. Williams*, 490 U.S. 319, 328-329

---

[4] Although it is not clear from the language of the complaint, Plaintiff stated in her oppositions to the motions to dismiss that Count 4 is alleged against Trinity and Bullock. (Plaintiff's Opposition to Trinity Motion, pg. 3; Plaintiff's Opposition to AATC Motion, pg. 10.)

(1989).  In reviewing a motion to dismiss for failure to state a claim, this Court's review is limited to the contents of the complaint.  *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994).   All allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party.  *Id.*   A complaint should not be dismissed unless it appears beyond doubt that a plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  *Id.*

Rule 12(b) provides that if, on a motion to dismiss for failure to state a claim, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, provided that all parties receive reasonable opportunity to present all material made pertinent to such a motion.

In deciding a motion for summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the party opposing the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986); *Eisenberg v. Insurance Co. of North America*, 815 F.2d 1285, 1289 (9th Cir. 1987). Summary judgment is appropriate if the pleadings and supporting documents "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  Material facts are those "that might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.  A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Id.*

A party moving for summary judgment initially must demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 325, 106 S. Ct. at 2553-54. The moving party merely needs to point out to the Court the absence of evidence supporting its opponent's claim; it does not need to disprove its opponent's claim. *Id.*; *see also* Fed. R. Civ. P. 56(c).

If a moving party has made this showing, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). *See also Anderson*, 477 U.S. at 256, 106 S. Ct. at 2514; *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995). The nonmoving party may not "replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990).

**C.      Rule 12(b)(7) standard of review**

A motion to dismiss for failure to join an indispensable party requires the moving party to bear the burden in producing evidence in support of the motion. *Citizen Band Potawatomi Indian Tribe of Okla. v. Collier*, 17 F.3d 1292, 1293 (10th Cir.1994). A 12(b)(7) motion for failure to join an indispensable party demands a fact specific and practical inquiry. *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir.1990) (citing *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118-19, 88 S.Ct. 733, 742-43, 19 L.Ed.2d 936 (1968)).

**Discussion**

-6-

Defendants Trinity and Bullock are named in Counts 1, 3 and 4.  These Defendants argue that they are entitled to dismissal of Plaintiff's entire complaint because Plaintiff has failed to join a party under Rule 19, Fed. R. Civ. P.  Defendants Trinity and Bullock also argue that they are entitled to dismissal of Counts 3 and 4 of Plaintiff's complaint because (1) Count 3 of Plaintiff's complaint fails to state a claim upon which relief can be granted, (2) Count 4 of Plaintiff's complaint fails to state a claim upon which relief can be granted, and (3) the Court lacks subject matter jurisdiction over Count 4.

Defendants AATC and Wynne are implicated in Counts 2 and 3.  The federal defendants argue that they are entitled to dismissal of Counts 2 and 3 of Plaintiff's complaint because (1) the Court lacks subject matter jurisdiction over Count 2 of Plaintiff's complaint, (2) AATC is not a proper defendant as to Count 2, (3) Count 3 appears to be directed at Trinity and therefore fails to state a claim against AATC and Wynne, and (4) Wynne is not a proper defendant as to Count 3.[5]

The Court considers the Rule 19 issue first, then addresses the parties' arguments as they relate to Counts 2, 3 and 4 of Plaintiff's complaint.

**A.    Plaintiff has failed to join a party as required by Rule 19, Fed. R. Civ. P.**

Defendants Trinity and Bullock argue that Plaintiff is married and that her spouse is a necessary party to this action.  According to Defendants, if they prevail in this action they are

---

[5] Defendants AATC and Wynne also argued in their motion to dismiss that Plaintiff had not properly effected service on Defendants AATC and Wynne.  In their reply, however, Defendants AATC and Wynne conceded that service was complete.

entitled to recover their attorneys' fees pursuant to 42 U.S.C. § 12117(a), 42 U.S.C. § 2000(e-5) and A.R.S. §§ 12-341.01 and 12-349. Defendants argue that if they are awarded attorneys' fees in this matter, they must be able to collect those fees from the community property of Plaintiff and her husband, and therefore Plaintiff's husband is a necessary party to this action. Plaintiff does not deny that she is married, but objects to the joinder of her husband as a party to this action.

Rule 19(a) of the Federal Rules of Civil Procedure states:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party.

In the present case, joinder of Plaintiff's spouse allows complete relief to be accorded among the parties and protects the interest of Plaintiff's spouse. In that respect, the present case is analogous to *Weimer v. Maricopa County Community College Dist.*, 184 F.R.D. 309 (D.Ariz.1998). In that case, the plaintiff brought suit against his employer claiming breach of contract, wrongful termination, and violations of his constitutional rights under 42 U.S.C. § 1983. *Id*. at 310. The plaintiff sought damages for, among other things, his loss of income. *Id*. The Court held that the plaintiff's spouse should be joined because her interests could, as a practical matter, be impaired if she was not joined: under Arizona law, lost earnings are

community property.  *Id.*  (citing A.R.S. § 25-211; *Shaw v. Greer*, 67 Ariz. 223, 194 P.2d 430, 431 (1948)).  In addition, the Court noted that complete relief might be denied to those already parties to the action, because Plaintiff based his cause of action on 42 U.S.C. § 1983 and a state law claim of breach of contract, both of which authorized an award of attorneys' fees to the successful party.  *Id*.  The court concluded that, because under Arizona community property law a judgment against one spouse does not bind the community, the plaintiff's spouse must be joined as a plaintiff for the marital community to be bound under a judgment awarding attorneys' fees to defendants.  *Id*. (citing *Spudnuts, Inc. v. Lane*, 139 Ariz. 35, 676 P.2d 669, 670 (1984)).

In the present case, Plaintiff seeks to recover back pay and front pay – wages in which her spouse has an interest.  (Complaint, pg. 11.)  In addition, Plaintiff's action arises under or implicates statutes which entitle the prevailing party to attorneys' fees.[6]  *See* 42 U.S.C. § 12117(a), 42 U.S.C. § 2000(e-5) and A.R.S. §§ 12-341.01 and 12-349.  For the reasons set forth in *Weimer*, this Court concludes that Plaintiff's spouse should be joined as a party.[7]

---

[6]Plaintiff contends that the possibility that Defendants may be awarded their attorneys' fees should not be a factor in the Court's decision on this issue because it is unlikely that Defendants will be entitled to recover fees.  In support of this contention, Plaintiff cites to *Christianburg Garment Co. v. EEOC*, 434 US 412 (1978), for the proposition that fees are only awarded in a discrimination case if the plaintiff's claims are frivolous.  The same "frivolousness" standard applies in § 1983 claims like those brought in *Weimer*, *see Legal Services of Northern California, Inc. v. Arnett*, 114 F.3d 135 (9th Cir. 1997) and the *Weimer* court nonetheless concluded that the possibility that the defendants could prevail on a claim for attorneys fees was grounds for joinder.

[7]At oral argument, Plaintiff's counsel indicated that it would be uncomfortable for Plaintiff to join her spouse as a plaintiff because he is an officer in the Air Force.  Plaintiff's husband may not desire to be a part of this action because of his employment; however, a person's employment is not a factor included in the analysis of whether a person is an indispensable party to an action.

1
2
3
4
5
6
7
8
9
10
11

Defendants argue that they are entitled to dismissal of the complaint because Plaintiff failed to join her spouse as a plaintiff.  Rule 19, Fed. R. Civ. P., however, contemplates joinder of the indispensable party by Court order if such joinder will not deprive the court of jurisdiction over the subject matter of the action.  Because this Court's subject matter jurisdiction is rooted in the federal nature of the litigation, rather than diversity of the parties, joinder of Plaintiff's spouse will not deprive the Court of jurisdiction.  Accordingly, the Magistrate Judge recommends that Plaintiff be afforded an opportunity to amend her complaint to join her spouse as a party to this action.  If Plaintiff elects not to join her husband as a plaintiff, all claims against Defendants Bullock and Trinity (Counts 1, 3 and 4) should be dismissed.

12
13

**B.    Defendant AATC is entitled to summary judgment on Count 2 because Plaintiff was not an employee of AATC**

14
15

*1.    Whether Plaintiff was an employee is an element of Plaintiff's claim for relief, not a jurisdictional issue*

16
17
18
19
20
21
22

In Count 2, Plaintiff alleges that AATC and Wynne[8] terminated her in violation of the Rehabilitation Act, 29 U.S.C. § 701 *et seq*.  The Rehabilitation Act, 29 U.S.C. § 791, provides the exclusive remedy for federal employees to assert claims of handicap discrimination.  *See Johnston v. Horne*, 875 F.2d 1415, 1420 (9th Cir. 1989), *overruled on other grounds as recognized in Williams-Scaife v. Department of Defense Dependent Schools*, 925 F.2d 346, 347-48 & nn. 3 & 4 (9th Cir. 1991).  Section 794a(a)(1) makes the remedies, procedures and rights

23

24
25

---

[8] Plaintiff's Opposition to Trinity Motion states Count 2 is alleged solely against AATC (Plaintiff's Opposition to Trinity Motion, pg. 6); Plaintiff's Opposition to AATC Motion states that Count 2 is alleged against AATC and Wynne.  (Plaintiff's Opposition to AATC Motion, pg. 5.)

of Title VII, 42 U.S.C. § 2000e-16 (1983), available to employees alleging a violation of § 791. *See id.* at 1418.   Thus, in order to state a claim for violation of the Rehabilitation Act, Plaintiff must allege that she is a federal employee with a disability who is otherwise qualified for employment and suffered discrimination because of her disability.   *See Walton v. U.S. Marshals Service*, 476 F.3d 723, 727 (9th Cir. 2007).

Defendant AATC argues that it is entitled to dismissal of Plaintiff's complaint because Plaintiff was not a federal employee and therefore the Court lacks subject matter jurisdiction over Count 2.   In support of its motion, AATC submitted evidence outside the pleadings, including declarations, emails, Plaintiff's employment application, inter-office memoranda, timesheets, correspondence, Plaintiff's resume and a performance work statement for Plaintiff's position. AATC argued that the Court's review of such evidence was permissible because, when considering a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the court is not restricted to the face of the pleading.

Neither the United States Supreme Court nor the Ninth Circuit has considered the specific issue of whether a plaintiff's status as an "employee" within the meaning of the Rehabilitation Act is jurisdictional.   However, in *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 126 S.Ct. 1235 (2006), the Supreme Court held that the threshold number of employees required for application of Title VII is not a jurisdictional issue but instead an element of a plaintiff's claim for relief.   The Court's holding adopted a "bright line" rule that "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character."

-11-

126 S.Ct. at 1245.  The Court reasoned that, because the 15-employee threshold appears in a separate provision that does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts, the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue.  *See id.*  (citing *Zipes v. Trans World Airlines, Inc*., 455 U.S. 385, 394 (1982)).

The reasoning applied by the Court in *Arbaugh* applies with equal force to the conclusion that a plaintiff's status as an employee is an element of the plaintiff's claim, not a jurisdictional issue.   The employee-numerosity requirement and the employee requirement both appear in a section headed "Definitions," § 2000e.  *Id*. at 1239.  In addition, nothing in the text of Title VII indicates that Congress intended courts, on their own motion, to assure that the employee requirement is met.   Since courts have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party, *see id.* at 1244 (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)), the absence of such language indicates that Congress did not intend the employee requirement to be jurisdictional.

The Court notes that  other courts have also interpreted *Arbaugh* broadly, generally concluding that federal employment statutes treat employment status as an element of the plaintiff's claim, not a jurisdictional requirement.  *See Minard v. ITC Deltacom*, 447 F.3d 352, 353 (5th Cir. 2006) (holding that the Family Medical Leave Act definition of an "eligible employee" is not a limit on a federal court's subject-matter jurisdiction but rather, is an essential ingredient of an FMLA claim for relief); *Miller v. County of Rockingham,* 2007 WL 990135, *3

(W.D.Va. 2007) (same); *Hopkins v. Cornerstone America*, 2007 WL 959042, *7 (N.D.Tex. 2007) (holding that whether plaintiffs are employees or independent contractors does not affect federal-court subject-matter jurisdiction but, instead, delineates a substantive ingredient of the plaintiffs' Fair Labor Standards Act claims for relief).   Thus, this Court concludes that the question of whether Plaintiff is an employee within the meaning of the Rehabilitation Act is an element of Plaintiff's claim for relief and not a proper basis for dismissal pursuant to Rule 12(b)(1), Fed. R. Civ. P.

>    2.    *Defendants are entitled to summary judgment on Count 2, pursuant to Rule 12(b)(6), Fed.R.Civ.P.*

This Court construes AATC's motion to dismiss Count 2 as a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), Fed. R. Civ. P., which should be reviewed under the standards for evaluating motions for summary judgment.   The parties contemplated conversion of the motion to dismiss into a motion for summary judgment.   AATC's Motion stated such and the Plaintiff's Opposition acknowledged the summary judgment standard.  (Plaintiff's Opposition to AATC Motion, pg. 4.)  Both parties presented affidavits and other materials in support of their arguments regarding Plaintiff's employment status.  At oral argument, Plaintiff's counsel stated that she believed there was sufficient evidence before the Court from which the Court could conclude that Plaintiff was an employee of AATC, including the allegations in the Complaint and Plaintiff's declaration.  (Tr. 4/19/07 at pgs. 32-33.)  This Court concludes that each party has had a reasonable opportunity to present material relevant to the issue of whether Plaintiff was an AATC employee, and that conversion of Defendant AATC's motion to dismiss Count 2 into

1    a motion for summary judgment on Count 2 is proper.

2
        3.    *Defendants are entitled to summary judgment on Count 2 because Plaintiff has*
3             *failed to demonstrate that she was an employee of AATC*

4          AATC asserts that Plaintiff was an employee of Trinity, who supplied her services to

5    AATC, through Trinity, AATC's independent contractor.  Plaintiff contends that she was a "joint

6
     employee" of both AATC and Trinity.
7

8          The Ninth Circuit recommends application of the "common law hybrid test" to determine

9    whether a plaintiff employed by an independent contracting entity is also an employee of the

10   government.[9]   *See Lopez v. Johnson*, 333 F.3d 959, 962 (9th Cir. 2003). The common law hybrid

11
     test places the greatest emphasis on whether the government had "the right to control and direct
12
     the work of the plaintiff, not only as to the result to be achieved, but also as to the details by
13
14   which that result is achieved." *See id.* at 963. Primary factors to be considered include: whether

15   the government is involved in the plaintiff's training, whether the government supervises the

16
     plaintiff's work performance, whether the plaintiff is performing an integral part of the
17
     government's business, whether the decision to terminate the plaintiff was solely within the
18
19   power of the contracting employer, and whether the government paid the plaintiff's wages and

20   social security taxes and provided vacation time.  Secondary factors include whether the plaintiff

21   worked on government premises, whether the plaintiff used governmental equipment, and

22
     _____
23
            [9] The Ninth Circuit also recognized a second test, the "common law hybrid employment test"
24   but noted that it is "ill-suited" for cases, such as this one,  in which the plaintiff is indisputably an
     employee of an independent contracting entity that provides employees to perform services for the
25   government, and the issue before the court is whether the plaintiff is also an employee of the
     government.

whether the government is involved in the means and manner of the plaintiff's work.

Applying these factors, this Court concludes that no reasonable juror could conclude that Plaintiff was an employee of AATC.  Plaintiff disputed very few of the facts presented by Defendants, and most of the facts that she characterizes as disputed are not actually disputed when the actual evidence is considered. The evidence shows the following work relationship:

- Plaintiff was employed as a Project Support Analyst from 1995 -2000 and a Senior Systems and Advanced Program Analyst from 2000-May 20, 2005.  (Complaint ¶ 11.)

- Plaintiff's job duties were defined by a Statement of Work, a contract between Trinity and AATC[10] under which AATC contracted with Trinity for "the services of one individual to provide test planning, management, execution, analysis, reporting and program security for the AATC Advanced Programs Office located in the AATC facility at the 162fd Fighter Wing (FW) in Tucson, Arizona." (AATC Motion, Ex. A, Work Statement.)[11]

- The period of performance in the Performance Work Statement is described in temporary terms and states it "shall be one year from award date of basic contract award and one year from date option is exercised (*if* exercised)."  (Plaintiff's Opposition to AATC Motion, Exs. 1 & 2.)

_____

[10] Although both parties generally regard Trinity as being in contractual privity with AATC, the evidence before the Court indicates that the Trinity subcontract was actually between Trinity and AppleOne Employment Services, who in turn had the prime contract with Air Combat Command. (AATC Motion, Ex. C, Declaration of Alan Young.)

[11]Plaintiff claims that the Work Statement submitted into evidence by Defendants was not the work statement in effect during her employment. Plaintiff submitted two Work Statements which she claims are the applicable statements.  Those statements, however, do not contradict the facts presented by AATC: like the work statement submitted by Defendant AATC, the work statement submitted by Plaintiff provides that Trinity was contractually obligated to provide AATC with "*one individual* to provide test-planning, etc." (Plaintiff's Opposition, Exs. 1 & 2 (emphasis added)).

- Plaintiff did not have an employment contract with AATC. (AATC Motion, Ex. C, Declaration of Alan Young.)

- On August 22, 2003, Plaintiff submitted an application for employment to Trinity.

- In her application, Plaintiff did not assert, as she does now, that she has been an employee of AATC. Rather, in the application, Plaintiff indicated that her previous employers for the positions of Project Support Analyst and Senior Systems Advanced Program Analyst were the civilian contractors who contracted with AATC. For example, the application states that her employer from 1994 to 1996 was NSA, Inc.; her supervisor was Bob George, the Site Manager for AATC; and she left NSA when the company lost its AATC contract to SDS International, which she lists as her next employer. According to the application, Plaintiff worked for: SDS International from 1996-2000, until the company lost its AATC contract; and Advancia Corp. from 2000 through the date of the application. For the almost ten years of employment described in the application, Plaintiff did not list AATC once as her employer. The application is signed and certified as true and complete to the best of [Plaintiff's] knowledge. (AATC Motion, Ex.. B, Dec. of Trinity Custodian of Records at ¶ 6 and Employment Application.)

- Although Plaintiff worked on government property and used government equipment, Trinity paid Plaintiff's salary and provided her benefits, including sick and annual leave, employment benefits and retirement benefits. (AATC Motion, Ex. A, Declaration of Lt. Col. Jeffrey Woelbling; Ex. C, Declaration of Alan Young.)

- Plaintiff apparently did not view AATC as her employer. On November 8, 2004, Plaintiff sent an e-mail to Ltc. Woelbling, the AATC program manager, telling him that if there was a problem with a Trinity employee, he should call Doug Bullock, the Trinity CEO.[12]   (Woelbling Declaration, ¶ 11, Exh. A.)

---

[12]Plaintiff presented evidence suggesting that Lt. Col. Woelbling supervised Plaintiff's work. (Plaintiff's Opposition, Ex. A, pg. 3 of 22.) Defendants admit that, from November, 2004 until March 1, 2005, Lt. Col. Woelbling was the on-site government representative and oversaw completion of duties by Trinity. Beginning March 1, 2005, Plaintiff was supervised on-site by Al Young, a Trinity employee. (AATC Motion, Ex. A, Declaration of Lt. Col. Jeffrey Woelbling.) Even if Lt. Col. Woelbling's presence on-site were construed as supervision of Plaintiff, the five months that he spent on-site, even when construed in the

- In that same e-mail, Plaintiff advised Woelbling that Doug Bullock had said that Woelbling could not sign time sheets as this would make him a supervisor of civilian contractors which would be in conflict with the FARS-Federal Acquisition Regulations.  (Woelbling Declaration, ¶ 13, Exh. A.)

- AATC did not perform Plaintiff's personal employee reviews or otherwise rate her performance, and did not have authority to formally counsel or discipline Plaintiff. (AATC Motion, Ex. A., Declaration of Lt. Col. Jeffrey Woelbling.)

- Alan Young, a Trinity employee, was Plaintiff's on-site supervisor from March 1, 2005.  He signed and approved time-off requests, time sheets, and travel expense reports; completed performance evaluations or provided input for performance evaluations; and counseled and disciplined other on-site Trinity employees. (Dec. of Alan Young, ¶¶ 1, 4 .)

- Once Trinity placed an on-site supervisor at the Advanced Programs facility, Plaintiff contacted that supervisor if she was sick or late. (AATC Motion, Ex. A, Declaration of Lt. Col. Jeffrey Woelbling; Ex. C, Declaration of Alan Young.)

- Trinity employees, specifically Al Young and Defendant Bullock, reviewed Plaintiff's timesheets.[13] (AATC Motion, Ex. B., pgs. 11-12 of 33; Ex. C., pg. 2 of

---

light most favorable to Plaintiff, is not enough for a reasonable jury to conclude that AATC and Trinity were joint employers of Plaintiff, in light of the overwhelming evidence that AATC did not directly supervise or control Plaintiff's work.  *See Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably could reasonably find for plaintiff.").

[13]Plaintiff argued that Lt. Col. Woelbling approved her time sheets.  In support of her argument Plaintiff produced a single email from Woelbling that states "starting this week there is a new DRZ/Trinity policy ... I need to approve (acknowledge) your time sheets and travel." (Plaintiff's Opposition, Ex. A, pg. 4 of 22.)  It is undisputed, however, that all on-site government representatives, including Woelbling, were to initial time sheets for Trinity employees after the on-site Trinity supervisor had approved those time sheets, in order for the Lt. Col. who oversaw Trinity's performance of its duties to verify the accuracy of those time sheets.  Woelbling's acknowledgement of Plaintiff's time sheets is not evidence of AATC's control over Plaintiff, but rather evidence of AATC's control over Trinity.

-17-

12.)

• Lt. Woelbling did not have authority to terminate Plaintiff. (AATC Motion, Woelbling Dec., Ex. A.)

• Plaintiff was terminated by Trinity.[14] (AATC Motion, Harding Dec., Ex. B., ¶¶ 6, 8.)

The only *Lopez* factor which weighs in Plaintiff's favor is that Plaintiff worked on government property and used government equipment. The other factors, and specifically the primary *Lopez* factors, lead to the undisputable conclusion that Plaintiff was an employed solely by Trinity. Plaintiff's own statements in her e-mails and job applications undercut any other conclusion. Because Plaintiff was not AATC's employee, Defendant AATC is entitled to summary judgment on Count 2.

**C.    Defendants AATC and Wynne are entitled to dismissal of Count 3 because Plaintiff was not a  federal employee; Plaintiff should be granted leave to amend Count 3 against Defendant Trinity**

*1.    Defendants AATC and Wynne are entitled to dismissal of Count 3*

Defendants AATC and Wynne argue that Count 3 appears to be directed at Trinity and

---

Moreover, the undisputed fact that Woelbling reviewed Plaintiff's time sheets after they had been approved by Trinity's on-site supervisor indicates that Trinity, not AATC, was responsible for monitoring Plaintiff's performance.

[14]Although Plaintiff contends that she was terminated by AATC because AATC Commander Col. Mooney announced at a meeting that she was terminated as of May 20, 2005, it is undisputed that Trinity sent Plaintiff a termination letter on May 26, 2005, indicating that Plaintiff's employment with Trinity would terminate on June 3, 2005. (AATC Motion, Ex. C, pg. 28 of 33.) Col. Mooney's mere announcement of Plaintiff's termination on May 20, is not evidence that he terminated Plaintiff or that he had the power to do so.

therefore fails to state a claim against AATC and Wynne.  Plaintiff indicated at oral argument that she is entitled to bring a claim for violation of the FMLA against Defendant AATC and "possibly" Wynne because she was an employee of AATC.  (Tr. 4/19/07 at pg. 8; see also Plaintiff's Opposition to AATC Motion pg. 9.).  For the reasons stated in Section B above, Plaintiff was not a federal employee and therefore cannot state a claim for violation of the FMLA against Defendants AATC or Wynne.

> 2.    *Plaintiff should be granted leave to amend Count 3 of her complaint against Defendant Trinity*

Defendant Trinity argues that Count 3 of Plaintiff's complaint fails to state a claim because the complaint contains allegations showing that she was ineligible for FMLA leave. Plaintiff's complaint alleges that she was employed by Trinity on May 20, 2004 and that she applied for FMLA leave on January 3, 2005.  (Complaint at ¶¶ 15, 53.)  An employee is only eligible for FMLA leave if she has been employed for at least twelve months. *See* 29 U.S.C. § 2611(2).

Plaintiff argues that her complaint also alleges that she was granted FMLA leave by Defendants on January 3, 2005.  Plaintiff asserts that the grant of  FMLA leave gives rise to a reasonable inference that Plaintiff may be able to prove that Defendants should be estopped from asserting a defense of non-coverage and therefore may be entitled to relief.

If  Plaintiff can demonstrate that her employer made a definite but erroneous representation to Plaintiff that she was an eligible employee entitled to leave under the FMLA, and that Plaintiff relied upon that representation to her detriment, the employer may be estopped

-19-

from defending an FMLA claim on ineligibility grounds. *See Minard*, 447 F.3d at 259 (stating that "an employer who without intent to deceive makes a definite but erroneous representation to his employee that she is an "eligible employee" and entitled to leave under FMLA, and has reason to believe that the employee will rely upon it, may be estopped to assert a defense of non-coverage, if the employee reasonably relies on that representation and takes action thereon to her detriment"). As her Complaint reads now, however, it does not specifically allege that Defendants should be estopped from asserting a defense of non-coverage because she was granted her prior FMLA request. Nor does the Complaint include specific allegations that Plaintiff relied to her detriment on Defendants' representation that she was eligible for FMLA leave. Accordingly, the Court concludes that Plaintiff has not sufficiently pled her estoppel argument and that the Complaint, on its face, demonstrates ineligibility to assert an FMLA claim. The Magistrate Judge therefore recommends that Count 3 of Trinity's Motion be granted, but that Plaintiff be granted leave to file an amended complaint to cure, if possible, this defect.

**D.    Count 4 of Plaintiff's complaint fails to state a claim upon which relief can be granted**

Defendants Trinity and Bullock argue that Count 4 of Plaintiff's complaint fails to state a claim upon which relief can be granted because the complaint does not allege sufficient facts to state a claim for intentional infliction of emotional distress. Trinity and Bullock further argue that in the event Plaintiff has stated a claim for intentional infliction of emotional distress, the Court should decline to exercise supplemental jurisdiction over that claim as alleged against Bullock.

In order to state a claim for intentional infliction of emotional distress, Plaintiff must allege that the conduct by Defendants Trinity and Bullock was "extreme" and "outrageous," Defendants intended to cause emotional distress or recklessly disregarded the near certainty that such distress would result from their conduct, and severe emotional distress occurred as a result of Defendants' conduct. *Mintz v. Bell Atlantic Systems Leasing Intern., Inc*., 183 Ariz. 550, 553-54, 905 P.2d 559, 562-63 (App. 1995) (citing *Ford v. Revlon, Inc.,* 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987).   The trial court must determine whether the acts complained of are sufficiently extreme and outrageous to state a claim for relief.   *Id*. (citing *Patton v. First Fed. Sav. & Loan Ass'n of Phoenix*, 118 Ariz. 473, 476, 578 P.2d 152, 155 (1978).   Plaintiff must show that the Defendants' acts were "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id*. (citing *Cluff v. Farmers Ins. Exchange*, 10 Ariz.App. 560, 562, 460 P.2d 666, 668 (1969)).   "[I]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Id*. (citing *Cox v. Keystone Carbon Co.*, 861 F.2d 390 (3d Cir.1988)).

During oral argument, Plaintiff's counsel was asked to identify the most outrageous conduct by Defendants.   Plaintiff's counsel identified paragraphs 33 and 55-59 of the complaint.   Those paragraphs allege: in response to Plaintiff's request for accommodation, Defendants subjected Plaintiff to an abusive five hour long meeting to discuss her disability; after the

meeting Plaintiff required immediate medical attention and administration of medications for anxiety and stress; in March 2005 Plaintiff asked her supervisor for help with the hostile work environment related to her FMLA leave; in March and April 2005 Plaintiff made three more verbal requests to her supervisor for his support in diffusing the hostile work environment; on or about April 12, 2005, Plaintiff made a written request for assistance with the hostile work environment to Bullock; Plaintiff was subjected to repeated threats of the loss of her job and the withdrawal of her security clearances; Plaintiff was subjected to disparaging comments about her medications and utilization of the FMLA, and Plaintiff was repeatedly ordered to provide additional confidential medical information.

Assuming that the allegations contained in Plaintiff's complaint are true, the Court is compelled, under the holding in *Mintz*, to conclude that Plaintiff has failed to state a claim for intentional infliction of emotional distress.  In *Mintz*, the Court granted the defendant's motion to dismiss an intentional infliction of emotional distress claim where the plaintiff had alleged that the defendant had twice failed to promote Plaintiff, discriminating against her on the basis of sex.  *See Mintz*, 183 Ariz. at 552-54, 905 P.2d at 561-63.  The lost promotions caused Plaintiff to suffer severe emotional and psychological problems and she took short term disability leave.  *See id.*  Her employer then forced her to return to work several weeks earlier than her doctor recommended.  *See id.*  The plaintiff worked for one day but the stress of her workplace caused her to be hospitalized.  *See id.*  Her employer then hand-delivered a letter of termination to her while she was hospitalized.  *See id.*  The Court concluded that, although the defendant

employer's conduct was "callous and insensitive," it was not sufficiently extreme and outrageous to state a claim against her employer for intentional infliction of emotional distress. *Id.*, 183 Ariz. at 555, 905 P.2d at 564.

The facts in *Mintz* are more egregarious than those alleged in the present case.  Here, Plaintiff's allegations amount to one abusive meeting, an unpleasant work environment in which Plaintiff was threatened that she would lose her job, and several ignored requests for assistance.  While these events are unfortunate and were no doubt upsetting to Plaintiff, they are not unlike the types of events that typically give rise to an employment discrimination claim.  They are not so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.  Because the facts alleged by the plaintiff in *Mintz* did not state a claim for intentional infliction of emotional distress, the facts alleged by Plaintiff also fail to state a claim.

Plaintiff alleges that Count 4 of her complaint is analogous to the types of intentional infliction of emotional distress claims upheld in three decisions by the United States District Court for the District of Arizona: *Darden v. Apollo Group, Inc*., 2006 U.S. Dist. LEXIS 9320, 11-12 (D. Ariz. 2006), *Forsman v. Chi. Title Ins. Co.*, 2006 U.S. Dist. LEXIS 2379, 11-12 (D. Ariz. 2006) and *Coffin v. Safeway*, 323 F. Supp. 2d 997, 1005-06 (D. Ariz. 2004).  Each of these cases, however, involved conduct by the employer that was far more extreme than the conduct at issue in this case.  In *Darden*, the plaintiff alleged a pattern of discrimination over two years: her employer monitored her telephone calls, subjected her to frequent meetings with the

manager, reprimanded her for infractions that were overlooked when committed by white employees, treated her less favorably than white employees with respect to the leave policy, and failed to promote her because of her race and age.  Both *Forsman* and *Coffin* involved allegations of physical sexual harassment: in *Forsman*, the plaintiff was physically and verbally sexually assaulted on at least three occasions by a client.  Her supervisor did not take action when the plaintiff reported the assaults, and instead Forsman was retaliated against for reporting the assaults and ultimately terminated.   In *Coffin*, the plaintiff suffered extreme sexual harassment, including many months of vulgar comments and repugnant physical acts made by her supervisor.  Both the *Forsman* and *Coffin* courts noted that allegations of physical abuse gave weight to the Plaintiff's intentional infliction of emotional distress claim.  No such allegations are present in this case.  The employer conduct at issue in the present case is more like the conduct at issue in *Mintz*, and fails to amount to extreme and outrageous conduct.

Because the Court concludes that Plaintiff has failed to state a claim for intentional infliction of emotional distress, it need not consider Defendant Bullock's alternate argument that, in the event Plaintiff has stated a claim for intentional infliction of emotional distress, the Court should decline to exercise supplemental jurisdiction over that claim as alleged against Bullock.

### Recommendation

The Magistrate Judge recommends the District Court, after is independent review of the record, enter an order:

1.     GRANTING the Motion to Dismiss filed on December 21, 2006 by Defendants

Trinity Technology Group and Douglas D. Bullock (Doc. No. 13);

　　　　2.　　　GRANTING the Motion to Dismiss filed on January 12, 2007 by Defendants AATC and Wynne (Doc. No. 14);

　　　　3.　　　FINDING that:

　　　　　　　　A.　　　Plaintiff's Complaint as against Trinity should be dismissed in its entirety for failure to name Plaintiff's husband as an indispensable party;

　　　　　　　　B.　　　Count 2, alleging AATC violated the Rehabilitation Act, should be dismissed because Plaintiff was not an employee of AATC;

　　　　　　　　C.　　　Count 3, alleging AATC and Wynne violated the FMLA, should be dismissed because Plaintiff was not an employee of AATC;

　　　　　　　　D.　　　Count 3, alleging Trinity violated the FMLA, should be dismissed for failure to state a claim as the complaint, on its face, demonstrates that Plaintiff was not an eligible employee under the FMLA;

　　　　　　　　E.　　　Count 4, alleging intentional infliction of emotion distress by Trinity and Bullock, should be dismissed for failure to state a claim, and

　　　　4.　　　GRANTING Plaintiff leave and sufficient time to amend her complaint to add her spouse as a plaintiff to the action and to make any other amendments not inconsistent with the Court's order;

　　　　5.　　　DENYING Plaintiff's request for attorney's fees and costs incurred in responding to Defendants' Motions.

-25-

1

2        Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections within

3   10 days of being served with a copy of this Report and Recommendation.  If objections are not

4   timely filed, they may be deemed waived.  If objections are filed, the parties should use the

5   following case number: **CV-06-526-TUC-FRZ**.

6        DATED this 20th day of June, 2007.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21   _____
     Jennifer C. Guerin
22   United States Magistrate Judge

23

24

25